**Robert P. SIMON**

v.

**UNITED STATES of America**

**No. CIV.A. 00–924–D–M3.**

United States District Court,
M.D. Louisiana.

April 21, 2003.

Dale R. Baringer, Schaneville & Baringer, Baton Rouge, LA, Jeff W. Traylor, Baton Rouge, LA, for plaintiff.

James L. Nelson, U.S. Attorney's Office, Baton Rouge, LA, for defendant.

### RULING & ORDER

BRADY, District Judge.

Pending before the court are cross-motions for summary judgment on all claims filed by Plaintiff, Robert P. Simon ("Simon"),[1] and Defendant, the United States of America ("the government").[2] The parties agree that this entire dispute can be resolved as a matter of law. The dispute concerns Simon's entitlement to a refund of money already paid to the Internal Revenue Service ("IRS") in satisfaction of an assessment made on December 16, 1985. Due to a computer error,[3] the IRS wiped this liability off its computerized database on December 22, 1997. When the IRS discovered the mistake—apparently due to the fact that Simon made a payment on his liability—the IRS reinstated the proper liability. Simon contends that the IRS acted improperly in reinstating the liability. He says that the computer "abated" his tax liability when it extinguished the debt from the records and argues that, as a consequence, the reinstatement was a "reassessment." The government cannot reassess the liability, even though it admittedly was proper in its origin, because the three-year statute of limitations on assessment had run.[4] Accordingly, Simon says, since he paid the amount that was reinstated, he should receive a refund. The government has opposed these arguments. The court did not require oral argument. Because the dispute concerns a request for a refund of tax money already paid under 26 U.S.C. § 7422, this court has jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1).[5] Simon sought administrative relief as required by 26 U.S.C. § 7422(a). Because he received no response within six months, he is entitled to bring this suit according to 26 U.S.C. § 6532(a). The court holds that under the most natural interpretation of the relevant statutory terms the reinstatement was not an assessment, and accordingly, enters summary judgment in favor of the government.

### FACTUAL BACKGROUND

The facts of this case are not in dispute. Only the proper characterization of those

---

1. Dkt No. 25.

2. Dkt No. 30.

3. The computer erred by miscalculating the running of the statute of limitations for collecting an assessment. Normally, the IRS cannot collect after ten years have passed, as they had in this case. 26 U.S.C. § 6502(a)(1) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—(1) within 10 years after the assessment of the tax"). In this case, however, Simon and the IRS entered into compromise negotiations, which tolled the statute of limitations. The computer ignored the tolling.

4. 26 U.S.C. § 6501(a) specifies that "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed."

5. *Your Ins. Needs Agency, Inc. v. United States,* 274 F.3d 1001, 1003 (5th Cir.2001).

facts under the relevant statutory terms is in controversy. A brief rendition of those facts should suffice.

Simon was the sole shareholder and president of Community Mobile Homes, Inc. in 1985. As the "responsible party" of Community Mobile Homes, Simon failed to pay employee withholding taxes in the amount of $13,431.59. On December 16, 1985, the IRS assessed a 100% penalty against Simon under 26 U.S.C. § 6672(a).[6] This assessment was timely, as it occurred within the applicable three-year statute of limitations for assessing tax liabilities.[7] On December 22, 1997, an IRS computer removed the liability from the IRS records because the program erroneously calculated that the statute of limitations for *collecting* the liability had run. In point of fact, that limitations period had been suspended by attempts between the IRS and Simon to compromise. After discovering the computer error, the IRS reinstated Simon's liability. Simon argues that the IRS abated his liability when the computer removed the debt from its records and consequently that it assessed a new liability based on the same failure to pay taxes in 1985. He argues that the IRS cannot do this because by the time of the rein- statement, the § 6501(a) three-year statute of limitations on assessment had run.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[8] When the burden at trial rests on the non-moving party the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.[9] The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-moving party's case.[10]

Although this Court considers the evidence in the light most favorable to the non-moving party, the non-moving party may not merely rest on allegations set forth in the pleadings. Instead, the non-moving party must show that there is a genuine issue for trial.[11] Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.[12] If, once the non-moving party has been given the opportunity to raise a genu-

---

**6.** 26 U.S.C. § 6672(a) provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

**7.** 26 U.S.C. § 6501(a). The Fifth Circuit has applied this limitations period to tax penalties as well as taxes. *See Bugge v. United States,* 99 F.3d 740, 744–45 (5th Cir.1996) ("As our court has explained before, the plain language of section 6501 establishes a three-year period

of limitations for assessing any tax imposed under the Code.") (internal quotations omitted) (applying the statute of limitations to a tax penalty under § 6672).

**8.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**9.** *Id.*

**10.** *Id.*

**11.** *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**12.** *Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996).

ine factual issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party.[13]

## ANALYSIS

### A. Applying Bugge

■ Both parties argue that the Fifth Circuit has adopted a rule with respect to abatements under 26 U.S.C. § 6404(a) that determines the outcome of this case. According to *Bugge v. United States*,[14] the IRS may abate a tax liability only for one of three statutorily prescribed reasons: (1) the assessment is excessive in amount; (2) the liability is assessed after the applicable statute of limitations has run; or (3) the assessment was erroneously or illegally imposed.[15] Where "a purely accidental and unintended processing error [occurs], the [...] unintended abatement lack[s] any authorization."[16] "[A]n unauthorized and accidental abatement of an entire assessment in contravention of section 6404(a)(1) is not effective."[17] Consequently, the general rule that "an abatement will wipe out [an] assessment" does not apply[18] and a correction of any such error is not a reassessment, but is "more accurately analyzed as the correction of an inadvertent error."[19]

The facts of *Bugge* and the facts in this case are strongly analogous, as both parties argue. In both cases, the IRS made an erroneous determination that led it to

zero-out the taxpayer's account balance. In both cases, the IRS discovered the error after it would have been too late to assess the tax penalty if the original assessment no longer controlled. And *in* both cases, the IRS reinstated the earlier liability. In *Bugge* an IRS worker mistakenly concluded—apparently due to a computer or computer printout error—that the IRS had twice assessed the same penalty against Bugge. The worker sought to correct what he regarded as a processing error. In fact, Bugge's account reflected only one penalty. When the IRS removed that penalty from Bugge's account, the account no longer reflected any liability. The Fifth Circuit ruled in *Bugge* that the IRS had attempted to abate Bugge's tax liability, but that the abatement was ineffective. The reduction was ineffective as an abatement because it resulted from an accidental processing error that induced the IRS to apply § 6404(a) erroneously. Consequently, the court ruled, the reinstatement was not an assessment, but a "correction of an inadvertent error." Since the reinstatement did not prejudice the taxpayer, the court held that the IRS had acted properly by reinstating the assessment.

### 1. The Government's Application of Bugge

The government argues that *Bugge* requires this court to rule in its favor. Following *Bugge*, it claims that 26 U.S.C.

---

**13.** *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *see also*, FED. RULE CIV. P. 56(c).

**14.** 99 F.3d 740 (5th Cir.1996).

**15.** *Id.* at 744; 26 U.S.C. § 6404(a)(2002 Supp.). Section 6404(a) provides:

The Secretary is authorized to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which—
(1) is excessive in amount, or

(2) is assessed after the expiration of the period of limitations properly applicable thereto, or
(3) is erroneously or illegally assessed.

**16.** *Bugge*, 99 F.3d at 745.

**17.** *Id.*

**18.** *Id.* at 744.

**19.** *Id.*

§ 6404(a) authorizes abatements only when there is something faulty with the judgment underlying the assessment—it is excessive or was imposed unlawfully—or when the assessment occurred too late—after the running of the statute of limitations on assessments. The computer error that wiped out Simon's account balance did so because it had calculated that the ten-year statute of limitations for *collection* had run. Since this is not one of the enumerated reasons for abating an assessment, the government argues, the reduction of Simon's account did not constitute a valid abatement. Moreover, the reduction was accidental in the sense that it issued from a mistaken computer procedure and not from a positive determination that Simon was due an abatement. According to *Bugge*, where an attempted abatement is invalid in this way, the validity of the original assessment is unaffected and can be reinstated, so long as the taxpayer suffers no prejudice.[20]

### 2. Simon's Application of Bugge

Simon also argues that *Bugge* controls this case, but believes that it mandates that this court rule in his favor. Unlike the government, Simon believes that § 6404(a) specifically allows the IRS to abate assessments when the ten-year statute of limitations on collection has run. The disagreement between Simon and the government concerns the meaning of "is assessed" in § 6404(a)(2). Extracting the irrelevant language, the statute provides: "The Secretary is authorized to abate the unpaid portion of the assessment of any liability, which is assessed after the expiration of the period of limitations properly applicable thereto."[21] Simon argues that

the phrase "is assessed" in this subsection means roughly "tax assessment existing on a taxpayer's account." Hence, properly read, the statute provides that the IRS may abate an assessment that exists on a taxpayer's account after the period of limitations properly applicable thereto. Hence, the statute of limitations in question applies to an *existing account entry,* not to *the act of entering an assessment.* This interpretation makes it clear, Simon says, that the applicable statute of limitations is the ten-year period applicable to *collections,* not the three-year period applicable to *assessments.* Under this interpretation the reduction was made for a valid reason under the statute.

Simon bases his interpretation of the statute on two points. First, he claims that tax practitioners use the phrase "assessed" in the sense proposed for the statute. Simon has no special argument that the statute should be interpreted in the light of tax practitioners' professional vocabulary. Instead, he uses this point to make a facially counterintuitive interpretation initially plausible. Second, he argues that this reading is the only one that makes all three clauses of § 6404(a) meaningful. For, if § 6404(a)(2) refers to the act of assessing and bars assessments that occur after the three-year limitation period, then it is a duplicative provision. This is so because § 6404(a)(3) allows abatements for assessments that are made erroneously or illegally. Imposing an assessment after the statute of limitations had run would be either erroneous or illegal. Therefore, § 6404(a)(3) covers the cases that the government claims § 6404(a)(2) covers. Interpreting the statute in this

---

**20.** A taxpayer is prejudiced if her tax liability increases between the reduction and the reinstatement. *See Bugge,* 99 F.3d at 744, Simon does not claim to have been prejudiced in this way.

**21.** 26 U.S.C. § 6404(a).

way would make § 6404(a)(2) superfluous. Conclusion: § 6404(a)(2) must refer to some thing else, namely account entries that are on the books after the collection limitations period has run.

Simon argues that the reduction in his account was a valid abatement under this new interpretation of § 6404(a)(2) because it was both authorized and intentional. Simon's statutory construction shows that the situation in his case is analogous to the situation in *Bugge*, he says. As in *Bugge*, the IRS undertook to act pursuant to its statutory authority. Hence, the reduction was an authorized abatement. Unlike in *Bugge*, however, though the abatement embodied a mistaken judgment, the mistake was not a processing error. Instead, it appears to have been some sort of systemic programming error. Hence, at some level the IRS made a mistake in choosing how to implement its rules. That is not the sort of mistake that the Fifth Circuit was willing to call a "ineffective abatement" in *Bugge*. Consequently, the abatement was neither unauthorized nor accidental and must be given effect. The immediate effect is that the reinstatement was a new assessment that violates the statute of limitations.

### 3. Limited Authorization

■ The court concludes that the reduction of Simon's account balance was not authorized as an abatement under the statute. Simon's argument is ingenious, but it is too clever by half. Section 6404(a) concerns itself with assessment, not collection. Subsection 6404(a)(2) speaks of a period of

limitations that is "properly applicable" to the assessment itself, not the collection of the assessment. The only way to read this statute in the way preferred by Simon is to do so using professional jargon as a guide. The court refuses to do so. It appears clear on the face of the statute that "is assessed" in subsection 6404(a) refers to the action of assessing, not the ultimate result of such an action. Hence it allows an abatement in the event that the IRS mistakenly assesses a tax liability after the three-year statute of limitations has run. This is the plain meaning of the section and the court need not advert to the canons of statutory construction when the meaning of the statute is clear.[22] Section 6404(a) does not specifically allow the IRS to abate tax assessments on the basis that it no longer can collect the money due. Consequently, whatever the IRS adjustment was, it was not an authorized abatement. There is an alternative to the view that the reduction in Simon's account was an unauthorized abatement, however, namely that the reduction was a proper ministerial bookkeeping adjustment and not an abatement at all. As will be developed below, the court believes that the same result follows from this characterization as would follow from its being an unauthorized abatement under *Bugge*.

### B. Distinguishing Bugge

■ Given that the IRS adjustment of Simon's account was not authorized as an abatement by § 6404(a), does it follow that it was an invalid abatement? The parties both indicate that they believe it is.[23] The

**22.** The argument that the plain meaning of the statute is redundant is without merit. While it is possible to view a violation of a statute of limitations as "illegal" or "erroneous," it is obvious to this court that subsection § 6404(a)(3) concerns itself with error or illegality in the underlying substantive judgment that a taxpayer is liable. Subsection

§ 6404(a)(2), meanwhile, concerns not the legitimacy of the judgment, but its timeliness. This is a distinction worthy of embodiment in the statute.

**23.** The government so indicates explicitly in its arguments. Simon, on the other hand, indicates agreement only by opposing the

court thinks that the parties are operating under a shared—and false—presupposition. The presupposition is that there are only two kinds of account adjustment: assessments and abatements. This premise is supported only by an overly positivistic view of the nature of these actions—one according to which to make an assessment is simply to record a debt in the IRS books and to make an abatement is simply to record a credit in the same books. That view is supported by neither the treatment of the statute in the courts nor by common sense. What is plain by looking at the nature of the IRS adjustment to Simon's account is that it had absolutely nothing to do with his liability itself. This feature of the case distinguishes it from *Bugge*, as well as the other cases upon which the parties place emphasis. It is also the key to the case. For the actual reason that the reduction to Simon's account was not an authorized abatement is·not that it was not authorized, but that it was not an abatement. It was, instead, a ministerial adjustment in the nature of bookkeeping. Since the reduction was not an abatement, its reinstatement was not an assessment and the statute of limitations does not bar it.[24]

The treatment that these matters has received by other courts confirms the sensibility of this understanding of the terms abatement and assessment. In *Bull v. United States*,[25] the Supreme Court made it clear that an assessment involves both a judgment of liability and a recording of that judgment on the IRS books:

> The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment.[26]

Thus an IRS assessment is more than a simple bookkeeping event. The bookkeeping is the culmination of a process whereby liability is determined. "An assessment is an administrative determination that a certain amount is currently due and owing as a tax. It makes the taxpayer a debtor in much the same way as would·a judgment."[27] Thus the positivistic equation of assessment with entry of a debt on the books is misguided. A debt entry is only the culmination of an assessment, which begins when the IRS determines that a taxpayer is liable. An abatement, mean-

view that the adjustment was not authorized by § 6404(a).

**24.** *See Range v. United States*, 245 B.R. 266, 274–75 (S.D.Tex.1999) ("[I]f the bankruptcy court had found, as the Ranges claim, that their tax liability was abated, any reassessment now would be outside the three-year limitations period. Furthermore, since none of the statutory exceptions apply, the IRS would be unable to reassess the taxes. However, the statute of limitations argument is moot, as the Court has found that the bankruptcy court's finding that Mr. Range's tax liability for 1983–85 was not abated was not clearly erroneous").

**25.** 295 U.S. 247, 259–60, 55 S.Ct. 695, 79 L.Ed. 1421 (1935).

**26.** *Id.*

**27.** *Rambo v. United States*, 492 F.2d 1060, 1061 n. 1 (6th Cir.1974). For similar statements see, *Cohen v. Gross*, 316 F.2d 521, 522–23 (3d Cir.1963) ("In the scheme which Congress has devised for the determination and collection of federal taxes, assessment is a prescribed procedure for officially recording the fact and the amount of a taxpayer's administratively determined tax liability, with consequences somewhat similar to the reduction of a claim to judgment") and *Pipola v. Chicco*, 169 F.Supp. 229, 231 (S.D.N.Y.1959) ("The assessment is an administrative determination that one is indebted to the Government for taxes—in effect, it is a judgment for taxes found due").

while, is the opposite of an assessment—the judgment that a credit is due and the consequent bookkeeping event. These statements put the lie to any claim that the IRS adjustment in this case could only have been an abatement, since the IRS act had precisely nothing to do with Simon's liability or any judgment about it.[28]

The alternative to this way of looking at the problem is that the IRS always acts without authorization in adjusting taxpayers' accounts when the collection statute of limitations has run. Under the government's arguments, the reinstatement was proper precisely because the reduction was not authorized. The government's position does not simply invalidate this particular account adjustment. It would seem to invalidate all such account adjustments. According to the government's arguments, then, every time the IRS purges its accounts of assessment records that no longer can be collected, it acts beyond its authority. This consequence is what so troubles the court about the government's argument. Deposition testimony indicates that the process that wiped out Simon's account occurs weekly. It is undoubtedly a necessary administrative function of the IRS. It does not follow from the lack of explicit statutory authorization that the

IRS does not have authorization to manage its accounts, however. Not all acts of an administrative agency can be tied down to statutory language or official regulations. It is absurd to think that they could be. As a consequence, the court rejects the approaches of both parties.

■ Instead, the court holds that the IRS has the inherent authority to make ministerial adjustments to accounts like the one made in this case. That authority is implicit in 26 U.S.C. § 6502(a)(1), which imposes the statute of limitations on collections. Courts have recognized that administrative agencies have various kinds of inherent authority.[29] That the authority is not explicit should not concern anyone, since actions under this authority seldom will impact the rights of any person. Under normal circumstances, the IRS will exercise that authority to remove assessments from its books that it cannot collect. It is only when the IRS takes such an action and it is mistaken that these acts will have any traction on individual lives. But in such cases, as here, the taxpayer will not be prejudiced because either she will be relieved of the liability as a practical matter or she will owe precisely what she owed before the mistaken ministerial act.

28. *See IRS v. Koff,* 2002 WL 1004744, *4 (E.D.Cal.2002) (holding that a printout showing no liability was not an abatement "when the reflection of the assessments was removed from the IRS computer [...] due to a programming error which did not reflect that this action was instituted to obtain a judgment"). The court in *Koff* proceeded to rely on *Bugge* to conclude that reinstatement of the liability on the taxpayer's account was not an assessment. This court believes that the reasoning of *Bugge* is applicable by extension only, once it has been determined that the adjustment was not an abatement.

29. *See Chlorine Institute, Inc. v. OSHA,* 613 F.2d 120, 123 (5 th Cir.1980) (holding that agencies have the inherent authority to correct ministerial errors); *Ober v. Whitman,* 243 F.3d 1190, 1194 (9th Cir.2001) ("[T]he inherent authority of administrative agencies to exempt *de minimis* situations has been recognized in contexts such as this where an agency where an agency is invoking a *de minimis* exemption as a tool to be used in implementing the legislative design") (internal quotation marks omitted); *Vanguard Interstate Tours, Inc. v. I.C.C.,* 735 F.2d 591, 596 n. 5 (D.C.Cir. 1984) ("[A]n agency has inherent authority to interpret its governing statute"); *Production Tool Corp. v. Employment & Training Administration,* 688 F.2d 1161, 1166 (7th Cir.1982) ("[A]n agency charged with the duty to enforce or administer a statute has inherent authority to issue interpretive rules").

It is at this point that the reasoning of *Bugge* becomes important. For all the reasons that supported allowing the IRS to reinstate the assessment in *Bugge* also support allowing that result in this case. Simon did not suffer any prejudice from this mistake and reinstatement. His indebtedness has not increased. Moreover, he has not suffered a reversal in a substantive determination regarding his liability. As in *Bugge,* the adjustment is traceable to a computer error. And in this case the computer error did not induce a mistaken judgment that Simon's liability had been wrongfully imposed. Instead, the computer wrongfully calculated that the IRS could not collect the debt Simon owed. The court finds that the reinstatement was a "correction of an inadvertent error." Since the IRS has the inherent authority to correct such ministerial errors, the reinstatement was proper.[30]

As a result of the above analysis, the court makes the following two findings as a matter of law. First, Simon's tax penalty never was abated. Second, and as a result, Simon is not entitled to a refund of the payments that he made under protest in satisfaction of the tax penalty liability. Accordingly, Simon's cause of action must be dismissed.

## CONCLUSION

For the reasons assigned above, the government's motion for summary judgment (Dkt No. 30) is hereby **GRANTED** in full. The Plaintiff's motion for summary judgment (Dkt No. 25) is hereby **DENIED** in full. All claims of the Plaintiff are hereby dismissed and judgment will issue in favor of the government.

---

30. *Chlorine Institute,* 613 F.2d at 123.